[Crim. No. 6099. Second Dist., Div. Three. Aug. 6, 1958.]

THE PEOPLE, Respondent, v. DONALD DELBERT
MADLUNG, Appellant.

Donald Delbert Madlung, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was convicted, in a jury trial, of first degree robbery. The jury found that he was armed with a revolver at the time the robbery was committed. Defendant admitted an allegation of the information that he had previously been convicted of grand theft. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that a record of the entire cause was not furnished to him; and that the deputy district attorney was guilty of misconduct.

On December 28, 1956, about 8 p. m., while Melba Hurley was on duty as a checker at the cash register in a grocery market, a man went to the front of the line of customers at the register, opened a paper sack, pointed a revolver at the checker, and said: "Open the register and give me the money and don't make a move or I will let you have it." The man held the sack open, and the checker put approximately $300 in it. The man ran out the side door and across the parking lot, entered an automobile, and went away. The automobile was driven by another man. When the robber ran out the door, the checker, a customer (Mr. Waring), and the proprietor of the market, ran after him. The customer and the proprietor saw the robber enter the automobile, which was a 1951 Studebaker with license number GLL 203. The left tail-light of the automobile was out, and the left fender had been smashed. The proprietor entered his own automobile and followed the Studebaker for several blocks. At one place, while the proprietor was pursuing the robber, the two automobiles were "bumper to bumper" by reason of traffic conges-

tion, and at that time the proprietor saw the profile of the robber. When the Studebaker entered a dead-end street (during the pursuit), the proprietor drove into a nearby driveway and lay in the seat of his automobile. As the Studebaker was coming out of that streets gunshots were fired by someone who was in that automobile.

On the evening of said December 28, Officer Strohman traced the license number GLL 203 "to the suspect [defendant]," and found that the number was the license number of a 1951 Studebaker automobile. The officers saw defendant at the Hob Nob Café, about 1:30 a. m. (on December 29), and they asked him if he owned a 1951 Studebaker. He replied in the affirmative. When the officers and defendant were at defendant's residence, which was two doors from the café, the officer asked him where his car was. Defendant (accompanied by the officers) went to a place between his residence and the café, and then he said, "Well, that's where I left it, I don't know where it is now." The officers said that he was under arrest for robbery at a market, that his car had been identified by license number, and that the description of the robber fitted him. They asked him if he wanted to tell "them about it, and he said no, that he didn't want to talk about it." After they had taken him to the sheriff's station, they took some keys (Exhibit 1) from his pocket.

Officer Weyant, one of the investigating officers, saw a 1951 Studebaker automobile, bearing license number GLL 203, in a police garage in Lynwood. The left rear fender and the left taillight of that automobile had been damaged. One of the keys from Exhibit 1 fitted the ignition lock of the automobile, and another of those keys fitted the lock of the glove compartment.

The checker (cashier), at the market, testified that the defendant was the man who robbed her at the market at said time.

Mr. Waring testified that on said December 28, about 8 p. m., as he (witness) went to the check stand in the market, the defendant went ahead of him; he (witness), while standing by the side of defendant, saw defendant "holding a gun on the cashier" and he saw the cashier put money "in a paper bag for him."

The proprietor of the market testified that when he was pursuing the Studebaker automobile he saw the "defendant by profile" in the passenger side of the Studebaker.

Officer Weyant testified that he and another officer had a

conversation with defendant in the forenoon of December 29 at the sheriff's station; he told defendant that the officers wanted to talk to him about a robbery in a market in Downey the previous evening, that defendant had been identified by two persons, and also that defendant's car had been identified; he (witness) asked defendant if he wished to discuss the robbery; defendant replied that he did not want to talk about any robbery and that all he wanted to do was to talk to an attorney; the officer said: "That is your constitutional right. However, in fairness to you, I want you to know what you are accused of, and want you to have the opportunity to tell us if you want to"; defendant replied: "I don't want to talk about this robbery or any other robbery. I just want an attorney"; the officer asked defendant if he wanted to account for his activities on the preceding evening; defendant said, "I don't know"; the officer asked him if he meant that he did not know where he was or he meant that he did not know whether he wanted to tell about it; defendant replied that he did not want to talk about it.

Defendant testified that he did not commit the robbery; he was not in that market on said December 28 at 8 p. m.; he was in the Hob Nob Café on said December 28, from approximately 5:30 p. m. until approximately 8:45 p. m., at which time he and one "Smitty" left the café; he and Lois Aho went to that café on said day about 5:30 p. m.; Lois left the café a little after 8 p. m. Defendant also testified that he had been convicted of a felony, grand theft; he told Officer Weyant where he was about 8 p. m. on said December 28.

Lois Aho testified that she and defendant went to the Hob Nob Café about 5:30 p. m. on said December 28; she left the café a little after 8 p. m.; defendant was in the café while she was there.

Joe Gillette and Jesse Smith, called as witnesses by defendant, testified that they saw defendant in the Hob Nob Café on said December 28, from approximately 7:45 p. m. to 8:45 p. m. Russell Julian, called by defendant, testified that he was the bartender at the Hob Nob Café; he saw defendant at the café on said December 28, from approximately 6 p. m. until approximately 8:30 p. m.

Officer Weyant testified, on rebuttal, that the market where the robbery occurred was about two and one-half miles from the Hob Nob Café; that on December 29 he asked Julian, the bartender (one of defendant's witnesses), what time defendant came to the café on December 28; Julian replied that it

was in the evening and he "didn't pay any attention to the exact time, but he paid the bill, $4 or $5 that he owed me"; the officer asked Julian how long the defendant stayed there; he replied, "I don't know, I didn't pay any particular attention to him, but later on he left with this fellow named Smith."

█ Appellant asserts in effect that he has been denied due process of law because a record of the entire cause, including the evidence, was not furnished to him. He does not refer to, or indicate in any way, any evidence which he claims was omitted from the record. A reporter's transcript, duly certified by the official shorthand reporter as a full, true and correct transcript of the proceedings had and testimony taken in this cause, has been filed herein. A certificate made by the judge, and attached to the reporter's transcript, states that no objection was made to the reporter's transcript, and that said transcript was approved by the judge. A clerk's transcript, duly certified by the county clerk as containing copies of the information, verdicts, notice of appeal and request for records on appeal, and minutes, has been filed herein. A certificate made by the trial judge, and attached to the clerk's transcript, states that no objection was made to the clerk's transcript and that said transcript was approved by the judge. Appellant states that he received those transcripts. The request of appellant for preparation of record on appeal was as follows: "[T]hat the record on Appeal and the Clerk's and reporter's transcript be prepared and transmitted to the Appellate Court forthwith, and that I be advised of said action." It thus appears that such request was for the "normal record" on appeal, as designated in the Rules on Appeal (rule 33). Thereafter appellant filed herein a request for augmentation of the record to include: all instructions and written opinions; the opening statement of the prosecution; and the arguments to the jury. An order was made that the county clerk transmit to this court a reporter's supplemental transcript containing the opening statement of the prosecution and the arguments to the jury at the close of the case. A reporter's supplemental transcript was filed herein— containing the prosecution's opening statement and the prosecution's arguments to the jury. Appellant's brief shows that he received a copy of that transcript. At the time of ruling on the request for augmentation, this court notified appellant that the original file of the superior court would be transmitted to this court. That file has been so transmitted, and all the instructions given are before this court. It does not

appear that any requested instruction was refused. The only instruction requested by defendant was given. That instruction defined "alibi," and stated that an alibi, if proved, was a complete defense, and "If, after a consideration of all the evidence, you have a reasonable doubt whether or not the defendant was present at the time the crime was committed, he is entitled to an acquittal." All the instructions have been considered by this court. The instructions were adequate, and there was no error in instructing the jury. Defendant was not denied due process of law.

 Appellant asserts further that the court should not have received the testimony regarding the statements made by defendant when the officers asked him if he wanted to discuss the robbery. One of those statements of defendant was made at defendant's residence, soon after he had been apprehended. At that time the arresting officers asked him if he wanted to tell about the robbery, and he replied that he did not want to talk about it. The other statements of defendant were made at the sheriff's station, the day after the robbery. At that time the investigating officers asked him if he wanted to discuss the robbery, and he replied to the effect that he did not want to talk about any robbery, but wanted to talk to an attorney. No objection was made, at the trial, to that testimony. Defendant was represented at the trial by the public defender. The court did not err in receiving the testimony to which no objection was made.

 Appellant asserts that the deputy district attorney was guilty of misconduct by reason of certain statements made in his argument to the jury. One of the statements, so referred to, was: "Officer Strohman testified first he went into the bar, he told the defendant what the care [charge] was and the defendant had nothing to say. Now, when any person is accused of a crime that they know nothing about, that they claim they didn't commit, I should think the normal reaction would be to say that they didn't know anything about it, not to say: 'I don't want to talk about it, I want to see an attorney'; the normal reaction would be to say, 'I don't know anything about this, I didn't do it, I am innocent, I don't know what you are talking about.' But not this defendant, he says he doesn't want to talk about it, he wants to see a lawyer."

Another of those statements was: "The next morning, 10:00 o'clock, the witnesses were brought down [to sheriff's sta-

tion] . . . they positively identified the defendant. . . . [T]hen Officer Weyant talked to the defendant, told him he had been identified, told him he was charged with armed robbery and told him everything the defendant should know about the case and said, 'What do you want to tell us about the case?' and the defendant's reaction was, 'I don't want to say anything, I want to talk to a lawyer.' They asked him if he wanted to account for his time the preceding night and the defendant said he didn't want to, he wants to talk to his attorney. This, I submit, is not the answer of an innocent man. This defendant had a free opportunity to account for his time, had an opportunity to mention the names of the people that were purportedly with him at 8:00 o'clock, but all the defendant was interested in doing was talking to his attorney; it certainly isn't the attitude of an innocent man.''

Those statements of the deputy district attorney were based on testimony that had been received without objection. No objection, or assignment of misconduct, was made at the trial regarding the statements. Apparently, at the time of trial, the defendant did not regard the testimony concerning the conversations as incompetent, and did not regard the argument based thereon as misconduct. The statements of the deputy district attorney should not be regarded as misconduct. Furthermore, it is reasonable to assume that the statements were of minor significance, in view of the strong direct evidence identifying defendant as the perpetrator of the crime, and in view of the alibi testimony wherein the ''approximations'' as to time might not be inconsistent with defendant's presence at the market which was a short distance from the café.

 In the last paragraph of appellant's 17-page opening brief he asks this court to appoint counsel for him, and that such counsel be given ample time in which to file a supplemental brief. Appellant states in his opening brief that ''although it is his desire to proceed in propria persona the circumstances occasioned by the denial of a complete record preclude him from doing so.'' Also, in the last paragraph of appellant's 10-page closing brief he asks for the appointment of counsel. It thus appears that appellant, who desired to represent himself, reserved his request for appointment of counsel until after he had filed his opening brief. Thereafter he continued to represent himself and filed his closing brief. It seems that he desired to represent himself and to be represented also by counsel. The briefs filed by appellant indicate that the person who prepared the briefs has had experience

in brief writing. Appellant's briefs adequately present and discuss the issues on appeal. Under such circumstances, this court should not appoint counsel.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Patrosso, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.